IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Criminal Action No. 96-cr-00468-RBJ

UNITED STATES OF AMERICA,

  Plaintiff,

v.

LARRY D. WYATT,

  Defendant,

 and

J & L FARMS MONEY PURCHASE PLAN,

  Garnishee.

## ORDER

This matter is before the Court on Garnishee's Objection to the Application for a Writ of Garnishment [ECF No. 25-3], filed as an attachment to its Answer [ECF No. 25]. For the following reasons, the objection is sustained, and the application for a writ of garnishment is dismissed.

## BACKGROUND

On December 16, 1996 the defendant, Larry Wyatt, pleaded guilty to one count of Theft, Embezzlement, or Misapplication by a Bank Officer, in violation of 18 U.S.C. § 656. [ECF No. 8]. The late Judge Daniel B. Sparr sentenced Mr. Wyatt to 21 months in prison with five years

of supervised release; a special assessment fee of $50; and restitution in the amount of $191,261.21 ($177,208.51 to Kansas Bankers Surety and $14,052.70 to Valley State Bank). [ECF No. 13]. On July 15, 2014 the government filed an application for a writ of garnishment in the amount of $127,661.21, identifying J&L Farms Money Purchase Plan ("J&L Farms") as the garnishee. [ECF No. 22]. The Clerk's Office issued the writ the next day. [ECF No. 23].

The Clerk's Office notified J&L Farms that it was required by law to answer within ten days whether or not it had in its custody, control, or possession any property owned by Mr. Wyatt, including any and all retirement accounts and any and all investment accounts due to Mr. Wyatt. [ECF No. 23 at 1]. J&L Farms filed an untimely answer on August 16, 2014, a month after the writ was issued.[1] [ECF No. 25].

J&L Farms listed one asset of which it had control: a retirement plan with a vested balance of $59,852.44 as of December 31, 2013. The garnishee denied, however, that the account balance was available for distribution and objected to the issuance of the writ. It based its objection on three pieces of information. First, the retirement plan was formed under and is subject to the provisions of the Employee Retirement Income Security Act (ERISA). Second, Mr. Wyatt is not eligible to receive plan payments while he remains employed by J&L Farms. And third, lump sum payments cannot be made without the consent of Mr. Wyatt's wife.

On July 16, 2014 the Clerk's Office also filed a Notice of Post-Judgment Garnishment and Instructions to Judgment Debtor. [ECF No. 24]. This notice was addressed to Mr. Wyatt, informing him that a writ of garnishment was being issued. It explained that Mr. Wyatt could protest the writ if he could show that his property fell into an exempt category. It also notified

---

[1] The government has not objected to the untimeliness of the filing and thereby waives any such objection.

Mr. Wyatt of his right to a hearing; all Mr. Wyatt had to do was check a box on the notice itself and send back the form to the clerk's office, with a copy addressed to the government attorneys. Mr. Wyatt did not respond in any way to the notice; he did not request a hearing nor did he file a written objection to the writ.[2]

## ANALYSIS

J&L Farms objects to the writ of garnishment on three grounds: (1) it is untimely because Mr. Wyatt cannot currently elect to receive plan payments; (2) Mrs. Wyatt has a property interest in the plan, which she has not waived;[3] and (3) the garnishment is subject to a 25% cap on disposable earnings under the Consumer Credit Protection Act (CCPA). The government contends that these arguments lack merit and, more importantly, that J&L Farms does not have standing to object to the writ of garnishment. The government maintains that it has a right to garnish the current balance of the retirement account in one lump sum payment.

### A. Standing.

Before addressing the merits of each of the arguments presented above, the Court must address the government's challenge to J&L Farms' standing. According to the United States, under the FDCPA the garnishee is only permitted to file an answer to the writ of garnishment. The judgment debtor and the government are then permitted to make objections and to seek a hearing on the question of whether property identified in the garnishee's answer is exempt from

---

[2] Our electronic filing system mistakenly refers to the garnishee's answer as "BRIEF by Larry Wyatt." [ECF No. 25]. The content of the filings show that the answer was submitted by counsel for the garnishee, Ralph W. Shaw. Mr. Shaw has confirmed that he represents only J&L Farms in this matter, not Mr. Wyatt. *See* [ECF No. 27 at 2, ¶ 5].

[3] Neither party has informed the Court of the name of Mr. Wyatt's spouse. For ease of reference the Court will refer to her as Mrs. Wyatt, though there is no indication in the record that she has adopted her husband's last name.

garnishment. Mr. Wyatt failed to make an objection or respond in any way. The government further argues that J&L Farms does not have Article III standing to adjudicate the merits of its objections because it would not suffer an injury in fact if it were to comply with the Court's order and release the funds.

Under Article III of the United States Constitution, a federal court lacks jurisdiction to proceed on the merits of a claim in the absence of an actual case or controversy. *E.g.*, *Habecker v. Town of Estes Park, Colorado*, 518 F.3d 1217, 1223 (10th Cir. 2008). Standing is a component of the case or controversy requirement. *Id.* "The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance." *Kowalski v. Tesmer*, 543 U.S. 125, 128 (2004). "This inquiry involves 'both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). The party invoking federal jurisdiction bears the burden of establishing the elements of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

> The basic components of standing are well-settled.
>
> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 560–61 (internal citations, quotation marks, and alterations omitted). However, "even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, [the Supreme] Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."

4

*Warth*, 422 U.S. at 499. "This rule assumes that the party with the right has the appropriate incentive to challenge (or not challenge) governmental action and to do so with the necessary zeal and appropriate presentation." *Kowalski*, 543 U.S. at 129.[4]

J&L Farms makes two arguments in support of standing. First it contends that it has standing because it challenges the authority of the Court to make it act. Second, it claims that it would suffer an injury in fact if the Court were to enforce the writ.

### 1. Authority of the Court

J&L Farms does not claim that it has a statutory right to object to the writ under the FDCPA. Upon an independent review of the statute, the Court agrees that it does not. However, it maintains that it has standing insofar as it alleges that the Court lacks the power to make it act, citing *United States v. DeCay*, 620 F.3d 534 (5th Cir. 2010), in support. The *DeCay* holding, however, is not so broad in its strokes.

In *DeCay* two defendants, Kerry DeCay and Stanford Barre, pleaded guilty to one count each of mail fraud, conspiracy to commit mail fraud, and obstruction of justice. 620 F.3d at 536. At sentencing the district court ordered DeCay and Barre to pay $1,064,362.15, jointly and severally, in restitution. After judgment entered, the United States moved for writs of garnishment under the FDCPA seeking seizure of the defendants' interests in their pension funds to satisfy the restitution order. The district court issued the writs of garnishment to the Louisiana Sheriffs Pension and Relief Fund (LSPRF), the garnishee. In its answer, the LSPRF contended that the pension benefits were exempt from seizure under federal and Louisiana law, and that enforcement of the writs against it as garnishee would violate the Tenth Amendment of the

---

[4] Though the Supreme Court has permitted third-party standing in certain situations, J&L Farms submits that it is not relying on the third-party standing doctrine. [ECF No. 29 at 2].

United States Constitution. It also argued that to the extent garnishment was proper, the government failed to follow the appropriate procedures to withdraw DeCay's employee contributions, and that the CCPA limited the right to garnish Barre's pension to 25% of his monthly benefit. Unlike Mr. Wyatt, DeCay and Barre then both objected to the garnishment, adopting the reasons put forward by the LSPRF. The district court overruled the objections and denied the parties' motions to alter or amend the judgment. All three parties filed an appeal to the Fifth Circuit.

The first question addressed on appeal was whether the LSPRF had standing to bring the appeal. The Fifth Circuit held that the LSPRF had standing to adjudicate its Tenth Amendment claim. *Id.* at 538. The court reasoned that the LSPRF had the right as a sovereign entity to say "you can't make me do this," to assert that the United States lacked the constitutional authority to compel it to release the funds. *Id.* The court likened this argument as to one for lack of personal jurisdiction or sovereign immunity. *See id.* at 538 n.3.

J&L Farms takes this reasoning to mean that any time a third party demands "you can't make me do this" it has standing. However, its interpretation goes beyond the scope of the holding. Notably, the Fifth Circuit declined to address whether the LSPRF had standing to raise the remaining objections – including the argument that the CCPA limits garnishment to 25% of the debtor's monthly benefit. *Id.* at 538–39. And yet, according to J&L Farms the same defense is made under the CCPA as under the Tenth Amendment: "you can't make me do this." The Court disagrees. The "you can't make me do this" defense was based on the *constitutional* authority of the court to compel an action by a party before it, as is the case with personal jurisdiction and sovereign immunity defenses. J&L Farms has put forward no claim that the

Court lacks the authority to compel it to act under the Constitution. And it provides no other authority in support of its apparent position that it has an unfettered right to object to a writ of garnishment on behalf of a non-objecting judgment debtor.

2. Actual Case or Controversy

J&L Farms' second argument is that it has standing to object because it would suffer an injury in fact if the Court enforced the writ. "[W]hen standing is placed in issue in a case, the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable." *Flast v. Cohen*, 392 U.S. 83, 99–100 (1968). As such, the Court will address each of the garnishee's objections one by one to determine whether it has standing to seek adjudication of each issue.

First, J&L Farms contends that it cannot release the funds because the request is untimely; Mr. Wyatt does not have a current right to access those funds under the terms of the plan. Under Article III standing analysis, J&L Farms must first establish that it would suffer an injury in fact if it were required to release the funds in spite of the terms of the plan. It has not done so. At most it claims that releasing the funds early would be a breach of its fiduciary duties. However, it acknowledges that it is insulated from liability to Mr. Wyatt if it should discharge the funds pursuant to the Court's order. [ECF No. 29 at 5].[5] And it has failed to put forward any argument that it would continue to be liable to Mr. Wyatt for the alleged breach of

---

[5] The FDCPA provides that "[a] person who pursuant to an execution or order issued under this chapter by a court pays or delivers to the United States, a United States marshal, or a receiver, money or other personal property in which a judgment debtor has or will have an interest, or so pays a debt such person owes the judgment debtor, is discharged from such debt to the judgment debtor to the extent of the payment or delivery." 28 U.S.C. § 3206. Simply put, this provision "ensures that a third party, *e.g.*, an employer or other garnishee, who pays the United States pursuant to an execution or order is relieved from liability to pay the debtor for the amounts paid." *Schueler v. Rayjas Enterprises, Inc.*, 847 F. Supp. 1147, 1170 (S.D.N.Y. 1994).

its fiduciary duties in spite of this apparent immunity. The Court finds that J&L Farms has not carried its burden of establishing an injury in fact with respect to its first objection.

Second, J&L Farms claims that because it is required by law to pay annuity benefits to Mrs. Wyatt, who has not consented to the distribution of the account balance, it would suffer an injury in fact if it were forced to release the funds. In particular, it claims that releasing the funds would open itself up to suit by Mrs. Wyatt, to whom it would not be entitled to immunity as she is not the judgment debtor. The government argues that J&L Farms does not have standing because it is merely attempting to protect the interests of another party, Mrs. Wyatt. The Court disagrees. J&L Farms is not concerned with Mrs. Wyatt's pension benefits for her sake but for its own. The Court finds that J&L Farms has sufficiently alleged that it would suffer an injury in fact if it were forced to comply with the writ without spousal consent. There is no question that the elements of causation and redressability have been met, and the Court sees no prudential limitations on the garnishee's standing. This claim can therefore move forward for adjudication on the merits.

Finally, J&L Farms argues that the government cannot seize all of Mr. Wyatt's monthly distribution payments at once, but is instead limited by a 25% cap under the CCPA. The problem with this argument is that it is brought prematurely; it is responsive not to the current writ of garnishment but to a potential future writ applied for at a future time, once Mr. Wyatt begins receiving disbursements. Instead of reviewing this claim under the standing doctrine, the Court *sua sponte* dismisses the argument as unripe. *See Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003).

B. <u>Merits</u>.

The only argument remaining for adjudication on the merits is J&L Farms' objection that the pension plan funds cannot be released without Mrs. Wyatt's consent. It bases its argument on the terms of the plan as mandated by ERISA. Under ERISA retirement benefits of married participants must be paid in the form of a qualified joint and survivor annuity. *See* 29 U.S.C. § 1055(a)(1). A qualified joint and survivor annuity is defined as an annuity "for the life of the participant with a survivor annuity for the life of the spouse which is not less than 50 percent of (and is not greater than 100 percent of) the amount of the annuity which is payable during the joint lives of the participant and the spouse, and which is the actuarial equivalent of a single annuity for the life of the participant." *Id.* § 1055(d)(1). A participant may only waive the qualified joint and survivor annuity with the consent of his spouse. *Id.* § 1055(c)(2). J&L Farms argues that the annuity creates a property interest in the account on behalf of Mrs. Wyatt. And because Mrs. Wyatt has not given consent to waive the annuity, the government cannot garnish the plan's funds.

The government argues that under the FDCPA co-owned property interests are determined by state law, and that to the extent the garnishment affects the property interest of a third party, that individual must intervene in the action and prove her interest. J&L Farms responds that because the pension plan is governed by ERISA, Mrs. Wyatt's property interest would be based in federal law. It also contends that she does in fact have such an interest.

The Court agrees with the garnishee. Federal law dictates whether Mrs. Wyatt has a property interest in this retirement account. *See United States v. Novak*, 476 F.3d 1041, 1061 (9th Cir. 2007); *see also* 29 U.S.C. § 1144(a) (noting that ERISA preempts "any and all State

9

laws insofar as they may now or hereafter relate to any employee benefit program" covered by ERISA).  And the government has put forth no argument disputing that Mrs. Wyatt has a property interest in the account due to the joint and survivor annuity provision.  Therefore, the Court must determine whether this property interest precludes the government from garnishing the retirement account.  The answer is simple: without Mrs. Wyatt's consent, the funds cannot be garnished.  *See Novak*, 476 F.3d at 1063; *cf. United States v. Beulke*, 892 F. Supp. 2d 1176, 1182 (D.S.D. 2012) (finding that the government was entitled to garnish judgment debtor's 401(k) account because he could elect to withdraw a lump sum *without* spousal consent).

Lastly, the government does not develop its position that Mrs. Wyatt must intervene in the action to protect her property interest.  It has cited to no provision of the FDCPA creating such a rule.  And the one case it cites in support does not consider this question; it merely establishes that the burden is on the objecting party to prove that the property interest exists.  The Court has determined that J&L Farms has standing to adjudicate whether the funds can be garnished without Mrs. Wyatt's consent.  And based on its argument the Court has found in its favor.  There are no grounds for ignoring such a finding simply because Mrs. Wyatt did not herself intervene in this action.

In conclusion, because Mrs. Wyatt's consent is required for the plan to make lump sum payments – consent that she has not given – the government cannot garnish the account.  The writ must therefore be dismissed.

**ORDER**

For the foregoing reasons, Garnishee's Objection to the Application for a Writ of Garnishment is SUSTAINED.  The Application for a Writ of Garnishment is DISMISSED.

DATED this 12th day of January, 2015.

BY THE COURT:

*[signature: Brooke Jackson]*

_____

R. Brooke Jackson
United States District Judge